Nathan A. Perea, Esq. (State Bar No. 235791)
**PEREA LAW, APC**
32605 Temecula Parkway, Suite 314
Temecula, California 92592
Telephone: (951) 303-6855
Facsimile: (951) 303-6955
nperea@perealaw.com

Attorneys for Plaintiff Gwendolyn Wixom

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GWENDOLYN WIXOM, an individual, )<br><br>        Plaintiff, )<br><br>  vs. )<br><br>COUNTY OF RIVERSIDE; )<br>RIVERSIDE DEPARTMENT OF )<br>PUBLIC SOCIAL SERVICES- )<br>CHILDREN'S SERVICES; NICOL )<br>KUSTIC; CARLA SANTANA; HIEU )<br>NGUYEN; LIZETTE MACIEL; and )<br>DOES 1-100, )<br><br>        Defendants. )<br>_____ ) | CASE NO.: 18-CV-00605<br><br>**COMPLAINT FOR DAMAGES**<br><br>1.    Violation of Civil Rights (*42 USC* §1983 and §1985, First and Fourteenth Amendments);<br><br>2.    Violation of Civil rights (*42 USC* §1983 and §1985, Fourteenth Amendment);<br><br>3.    Violation of Civil Rights (*42 USC* §1983 and §1985, Fourteenth Amendment);<br><br>4.    Monell Related Claims<br><br>DEMAND FOR JURY TRIAL |

COMES NOW PLAINTIFF GWENDOLYN WIXOM and allege as follows:

## <u>JURISDICTION</u>

1.    Pursuant to the Court's local Rule 8-1, Plaintiff asserts that the statutory or other basis for the exercise of jurisdiction in this United States Federal District Court is based upon a federal question asserted under *42 U.S.C.* §1983 and §1985 as to violations of Plaintiff's rights under the United States Constitution

1  and laws, including those under the First and Fourteenth Amendments, as well as

2  supplemental jurisdiction for Plaintiff's state claims asserted pursuant to *28 U.S.C.*

3  1367(a); all of which Plaintiff requests be tried and heard before a jury.

4  <u>**VENUE**</u>

5  2.   At all relevant times mentioned in her Complaint, Plaintiff was a

6  resident of Riverside County, California and the actions and occurrences giving

7  rise to this Complaint occurred in the County of Riverside.

8  <u>**PARTIES**</u>

9  3.   At all times mentioned herein, the COUNTY OF RIVERSIDE was

10  and is a public entity (hereinafter "COUNTY" or "RIVERSIDE COUNTY").

11  4.   At all times mentioned herein, the RIVERSIDE COUNTY

12  DEPARTMENT OF PUBLIC SOCIAL SERVICES– CHILDREN'S SERVICES

13  (hereinafter "DPSS") was and is a subdivision or entity of the RIVERSIDE

14  COUNTY.

15  5.   At all times mentioned herein, Defendant NICOL KUSTIC

16  (hereinafter "KUSTIC") was an officer, agent and/or employee of RIVERSIDE

17  COUNTY.

18  6.   At all times mentioned herein, Defendant CARLA SANTANA

19  (hereinafter "SANTANA") was an officer, agent and/or employee of RIVERSIDE

20  COUNTY.

21  7.   At all times mentioned herein, Defendant HIEU NGUYEN

22  (hereinafter "NGUYEN ") was an officer, agent and/or employee of RIVERSIDE

23  COUNTY.

24  8.   At all times mentioned herein, Defendant LIZETTE MACIEL

25  (hereinafter "MACIEL") was an officer, agent and/or employee of RIVERSIDE

26  COUNTY.

27  9.   Plaintiff is informed and believes and, based upon such information

28  and belief, alleges that each of the Defendants are responsible in some manner for

1    the events and happenings referred to herein, and were the legal cause of injury

2    and damages to Plaintiff as herein alleged.

3        10.    Plaintiff is informed and believes and, based upon such information

4    and belief, alleges that, at all times herein mentioned, each and every Defendant

5    was the agent and/or employee of their co-defendants, and each of them, acting at

6    all relevant times herein under color of authority of a governmental entity and

7    under color of authority of statutes, ordinances, regulations, customs, practice and

8    usage of the public entity, State of California, and/or the United States.

9        11.    Plaintiff is informed and believes and, based upon such information

10   and belief, alleges that the names of some DOES 1 - 100 are unknown to Plaintiff,

11   and were the agents and/or employees of the co-defendants, and each of them, and

12   were acting at all relevant times herein under color of authority of a governmental

13   entity and under color of authority of statutes, ordinances, regulations, customs,

14   practice and usage of the public entity, State of California, and/or the United

15   States.

16                          **GENERAL ALLEGATIONS**

17       12.    This action arises from an investigation and proceedings of a juvenile

18   dependency investigation pursuant to Chapter 2 (commencing with Section 200)

19   of Part 1 of Division 2 of the *Welfare and Institutions Code* initiated or conducted

20   by Defendants, RIVERSIDE COUNTY, also known as, or referred to as,

21   RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES–

22   CHILDREN'S SERVICES (or hereinafter as "DPSS") regarding Plaintiff's minor

23   children A.E., H.E., and O.E. born in 2003, 2007, and 2009, respectively, and

24   Plaintiff, GWENDOLYN WIXOM (hereinafter "GWENDOLYN").

25   GWENDOLYN is the natural mother of A.E., H.E., and O.E. The father of the

26   children is Joshua Easley ("Joshua").

27       13.    GWENDOLYN filed for divorce from Joshua in 2011. The divorce

28   was contentious and spanned several years. In October 2015, GWENDOLYN filed

1  for a restraining order against Joshua in order to protect herself and children, as

2  well as her parents with whom she lived, and who are suffering multiple ailments

3  including Alzheimer's.  GWENDOLYN's sister lived in Hawaii, and did not want

4  GWENDOLYN living with her parents because she wanted her parents to move in

5  to a nursing facility so she would get full control of their finances.  From 2015 to

6  2017, GWENDOLYN and her sister were involved in a very contentious probate

7  battle over the custody and care of their parents. GWENDOLYN is informed and

8  believes, and on that basis alleges that her sister and Joshua became friends due to

9  their mutual anger towards GWENDOLYN, as GWENDOLYN was divorcing

10  Joshua, obtained a restraining order, and had him arrested and booked in jail on

11  several occasions.  GWENDOLYN's sister was angry that GWENDOLYN lived

12  with their parents and went against her plans.

13       14.   On February 10, 2016, the Defendants received an anonymous phone

14  call alleging emotional abuse and neglect by Joshua. It was reported that the

15  children reside with their parents and maternal grandparent. It was reported that

16  the father has a history of domestic violence against the mother. It was reported

17  that there was a restraining order against Joshua but that he lived in the home. This

18  was false. It was also reported that there was no information as to whether physical

19  abuse had occurred in the home or whether the children witnessed any domestic

20  abuse.

21       15.   During her investigation KUSTIC searched the Riverside County

22  Superior Court website and found that GWENDOLYN filed for Divorce on April

23  26, 2011, and obtained a retraining order against Joshua on October 02, 2015.

24  KUSTIC found that GWENDOLYN stated in the restraining order application that

25  in September 2015, she was the victim of a domestic violence episode which gave

26  rise to the request for the restraining order.

27  ///

28  ///

D:\MATTERS\WIXOM\00039\PLEADINGS\Complaint final 3 22 18.wpd    4

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

16.     During her investigation KUSTIC noted GWENDOLYN was seeking a permanent restraining order, and that the hearing on the permanent restraining order was on calendar for April 22, 2016.

17.     During her investigation, KUSTIC noted Joshua was arrested on January 9, 2016 and again on February 20, 2016 for violating the restraining order GWENDOLYN obtained against him.

18.     During her investigation, KUSTIC went to the children's school and spoke with the minors without a warrant or court order, without parental permission, without probable cause, and outside the presents of the parents. KUSTIC interrogated the children who admitted they lived with GWENDOLYN during the weekend but because she worked during the week and cared for her Alzheimer's inflicted parents, the children stayed with Joshua's parents during the week. The children indicated they saw Joshua at GWENDOLYN's home, and that they witnessed arguing, but never witnessed any physical violence.

19.     On February 23, 2016, KUSTIC went to GWENDOLYN's home, accompanied by law enforcement. She confirmed she has full custody of the children, that her parents have Alzheimer's and that the children stay with Joshua's parents during the week due to the fact that she takes care of her parents and because the paternal grandmother is support in the care of AE, who has been diagnosed with a brain tumor since he was fourteen months old, and treats at Children's Hospital Los Angeles, and has a prosthetic eye due to the cancer that has traveled down to his spine. She also confirmed that the week prior, Joshua was arrested for violating the restraining order that she enforced against Joshua, and that he was still in jail. She confirmed that he came by the house and got loud and she called law enforcement to have him arrested, but she contacted Joshua's parents to pick the children up before Joshua was arrested because she did not want her children to watch their biological father get arrested and taken to jail.

///

20.     Despite learning that GWENDOLYN was taking care of her children, was the victim of spousal abuse and domestic violence, and protected herself, her children, and her parents who have Alzheimer's, the best way the legal system has, that is, by and through obtaining a restraining order, and calling law enforcement two times to enforce the restraining order, KUSTIC told GWENDOLYN that she was not protective enough, and that she would have to take GWENDOLYN's children into custody and place them in foster care if GWENDOLYN would not sign a safety plan that required GWENDOLYN to enforce the restraining order, which she had been doing all along.

21.     On March 15, 2016, a Tuesday, GWENDOLYN contacted KUSTIC and informed her Joshua had been released from jail and that Joshua's father came to GWENDOLYN's home to get Joshua's vehicle. GWENDOLYN further informed KUSTIC that there were no other incidents, and everything seemed quiet since Joshua's arrest, even though Joshua had been released. On this same day KUSTIC spoke with Joshua who stated he was aware of the restraining order against him, and that he could not attend a Team Decision Meeting with DEFENDANTS wherein GWENDOLYN was present due to the restraining orders.

22.     At no time was GWENDOLYN ever accused of physically abusing or allowing her children to be physically abused by anyone, including Joshua.

23.     At all times GWENDOLYN maintained a restraining order that she obtained under her own volition, against Joshua.

24.     At no time was there ever a report of physical, verbal or sexual abuse against the children, levied by GWENDOLYN or Joshua.

25.     On at least two occasions, law enforcement arrested Joshua, who subsequently pled guilty for violating the restraining order after GWENDOLYN enforced the restraining order, by calling law enforcement, and GWENDOLYN,
///

1  on at least one occasion prior to the restraining order, had Joshua arrested for his

2  antics.

3      26.    On Tuesday, March 22, 2016, KUSTIC  received an anonymous call

4  that over the weekend Joshua was at GWENDOLYN's home, while the children

5  were present. GWENDOLYN is informed and believes, and on that basis alleges

6  the anonymous caller was her sister, and that Joshua had come by the house over

7  the weekend to aid GWENDOLYN's sister in the probate matter.

8      27.    The anonymous caller did not make a statement, or otherwise allege

9  that Joshua was physically abusing GWENDOLYN. There was no allegations that

10  Joshua was physically abusing the children, and there were no allegations or

11  statements that Joshua or GWENDOLYN were physically abusing, sexually

12  abusing, or verbally abusing the children, each other, or anyone, over the weekend

13  of March 19-20, 2016. The report from the anonymous caller was solely that

14  Joshua was at the home over the weekend while the children were present.

15      28.    There was no report or indication from the anonymous informant that

16  on Tuesday, March 22, 2016, GWENDOLYN would take the children home to

17  Joshua and subject them to abuse. There was absolutely no indication that on

18  Tuesday, March 22, 2016, the children were at risk to suffer physical harm or

19  abuse, at all.

20      29.    On March 22, 2016 after picking the children up from school and as

21  she walked into the home, GWENDOLYN was confronted by KUSTIC who was

22  accompanied by a law enforcement officer. The two younger children went inside

23  the home, and upstairs, the oldest child was not present. Joshua was not present.

24  There was no sign of him at the home either, and there was no sign that Joshua had

25  been at the home on Monday, or Tuesday, or that he was coming over to the home.

26      30.    On March 22, 2016, Joshua was still under a restraining order

27  GWENDOLYN obtained against him, and had enforced on at least two prior

28  occasions. Although Joshua was released from jail, to the extent he violated the

1   restraining order again, he was still under the force of the restraining order, and

2   subject to arrest and detention. Consequently, had Joshua arrived at

3   GWENDOLYN's home, while law enforcement was present, he would have been

4   arrested.

5        31.   KUSTIC entered GWENDOLYN's home without consent, a warrant

6   or valid court order and without exigency. KUSTIC proceeded to interrogate the

7   children about whether Joshua was present inside GWENDOLYN's home over the

8   weekend.  Two of the children stated that they saw him there.  One said she saw

9   him there over the phone on "Face-time", as she stayed at her grandparents over

10  the weekend.

11       32.   None of the children informed KUSTIC or law enforcement that over

12  the weekend there was physical abuse, emotional, abuse, or verbal abuse going on

13  inside GWENDOLYN's home.

14       33.   After interrogating the children, and while law enforcement was

15  present, KUSTIC had time to make a phone call, talk with her supervisor, and

16  speak to the paternal grandparents. While law enforcement was present, and

17  despite the fact Joshua was not present and had not been present for at least two

18  days, and without a single allegation of abuse occurring over the weekend, on

19  Monday, or that Tuesday, and within the time KUSTIC and SANTANA could and

20  should have applied for and obtained a warrant or court order, KUSTIC and

21  SANTANA removed the children from GWENDOLYN's custody and care and

22  had the children leave GWENDOLYN's home with the paternal grandparents.

23       34.   On March 23, 2016, KUSTIC was informed that Joshua, the

24  perpetrator, and person from whom which a restraining order is in place, was at

25  the paternal grandparents home causing trouble with the grandparents while the

26  children were there. GWENDOLYN was not present at the paternal grandparents'

27  home.  However, on March 23, 2016, without a court order, warrant, detention

28  hearing scheduled, detention petition filed, and without the presence of exigent

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1 circumstances, KUSTIC officially detained GWENDOLYN's children from

2 GWENDOLYN.

3      35.    At no time did DEFENDANTS have a warrant to remove the children

4 from the custody and care of their mother GWENDOLYN, or restrict, restrain, and

5 remove GWENDOLYN from providing care to her children.

6      36.    At no time did DEFENDANTS have a court order to remove the

7 children from the custody and care of their mother GWENDOLYN, or restrict,

8 restrain, and remove GWENDOLYN from providing care to her children.

9      37.    At no time did DEFENDANTS have exigency to remove the children

10 from the custody and care of their mother GWENDOLYN, or restrict, restrain, and

11 remove GWENDOLYN from providing care to her children.

12      38.    At no time was their an imminent threat of severe bodily injury to the

13 children.

14      39.    At no time did DEFENDANTS attempt to arrest Joshua for violating

15 a restraining order based upon the allegations from the anonymous caller that

16 Joshua was violating the restraining order over the weekend of March 19 and 20,

17 2016.

18      40.    Thereafter in reports to the Juvenile Court and in other official

19 documents KUSTIC, SANTANA, NGUYEN and MACIEL, and all other

20 DEFENDANTS, made material misrepresentations of facts, including, but not

21 limited to:

22      a. GWENDOLYN caused serious physical harm to the child or made a

23 plausible threat to cause serious physical harm in the current investigation, as

24 indicated by Domestic Violence likely to injure child.

25      b. GWENDOLYN describes the child in predominately negative terms or

26 acts toward the children in negative ways that result in the child being a danger to

27 self or others, acting out aggressively, or being severely withdrawn or suicidal.

28 ///

c. GWENDOLYN is unable or unwilling to protect the child from serious harm or threatened harm by others. This may include physical abuse, sexual abuse, or neglect.

d. GWENDOLYN's "Criminal History" included the fact that GWENDOLYN filed for divorce and sought a restraining order against Joshua.

e. GWENDOLYN is unable or unwilling to protect the children despite the fact that she obtained a restraining order, sought divorce, and had Joshua arrested on at least three occasions.

f. There is a substantial danger to the physical health of the child or the child is suffering severe emotional damage, and there are no reasonable means by which the child's physical or emotional health may be protected without removing the child from the parents' or guardians' physical custody. However, at the time of the removal, Joshua was not present at the home, had a restraining order against him, and could have been arrested for violating the restraining order had he showed up.

g. GWENDOLYN is likely to flee the jurisdiction of the juvenile court because she sought shelter at a woman's shelter in a neighboring County.

h. There was ongoing domestic violence in the home and domestic violence between the parents.

I. The parents place the children at risk of physical and emotional harm in that they expose the children to domestic disputes. There is ongoing domestic violence in the home as evidenced by the father's past arrest history for Domestic Violence against GWENDOLYN and the children being present during those arrests.

j. GWENDOLYN continues to put Joshua before the safety of her children.

k. GWENDOLYN continues to have contact with Joshua and allows her children to have contact with Joshua.

///

1       l. Further, the parents continue to violate the active Restraining Order in

2 that the mother allows the father to have unauthorized contact with her and the

3 children and such behaviors place the children at risk of abuse and/or neglect.

4       m. The children are at substantial risk of abuse and neglect based on the

5 parent's history of domestic violence and failure to follow through with safety

6 measures put in place to protect the children.

7       n. Both parents are lacking insight and protective capacities and continue to

8 engage in ongoing domestic violence.

9       41.    The conduct, statements, and allegations and information submitted

10 by said DEFENDANTS were false, coercive, fabricated, and/or misrepresented the

11 true facts and circumstances of Plaintiff and her minor children, including that

12 there was no risk of harm to the children in GWENDOLYN's care and custody,

13 and that GWENDOLYN'S actions did not endanger the children's health or safety

14 and certainly did not place the children in imminent threat of severe bodily injury.

15       42.    These actions of the DEFENDANTS, and each of them, were in

16 complete disregard to GWENDOLYN's rights and were brought in retaliation for

17 GWENDOLYN's exercise of her right to object to, refuse and/or complain about

18 the DEFENDANTS' unwarranted conduct and threats. Defendants, and each of

19 them, knew, or should have known, that their conduct was unlawful; that the

20 statements were untrue, and either fabricated the allegations, failed to include

21 and/or disclose known exculpatory evidence; and that they wrongfully obtained, or

22 attempted to obtain, evidence and compliance from GWENDOLYN by duress,

23 intimidation, coercion or undue influence; all with a conscious disregard for the

24 rights of GWENDOLYN, and each of them.

25       43.    From March 2016, and thereafter, Defendants COUNTY, and all

26 individual Defendants, and Does 1 to 10, acted together in initiating and

27 conducting investigations and proceedings, and related matters and conduct,

28 pursuant to (Section 200) of Part 1 of Division 2 of the *California Welfare and*

1  *Institutions Code* relating to allegations of child abuse and/or neglect; and did so

2  without any just or reasonable cause, in retaliation, and in violation of law (both

3  statutory and case law), and with an intent by Defendants to cause injury to

4  Plaintiff, or with a willful and conscious disregard of the Plaintiff's rights or

5  safety. Such conduct was carried out, initiated, performed, authorized and/or

6  conducted, with the knowledge, consent, authorization, and in concert with all

7  other Defendants, including, but not limited to the following:

8       a.     By using coercive, intimidating, abusive, demeaning and improper

9  conduct during their investigation, including using the threat of removal, and

10  continued detention of GWENDOLYN's minor children, when no basis for

11  removal, or continued detention was present;

12       b.     By retaliating against GWENDOLYN, under color of law, for

13  GWENDOLYN's exercise of her legal rights under the First Amendment of the

14  Constitution to object to, refuse and/or complain about the conduct of

15  Defendant DPSS social workers;

16       c.     By interfering with and causing the detention of GWENDOLYN's

17  minor children from being in the care, custody and control of their mother since

18  March 22, 2016 without just or reasonable cause, without consent of their mother,

19  without warrant, and without the existence of an imminent threat of serious bodily

20  injury to said child;

21       d.     By presenting biased, unfounded, untrue, misrepresented, incomplete,

22  and fabricated evidence and testimony, and failing to provide exculpatory

23  evidence, to the Riverside Juvenile Court, including by falsifying information and

24  evidence to the court in order keep the minor children from being returned to their

25  mother's care custody and control for the purpose.

26       e.     GWENDOLYN submits that further matters and issues may be shown

27  upon full review of all the records and files of the Juvenile Court and DPSS, and

28  as discovery has not been conducted as to such issues.

44.     The aforesaid conduct of Defendants COUNTY and its DPSS and its agents or employees in using coercion, intimidation and duress upon GWENDOLYN, in presenting the aforesaid false, misrepresented and fabricated evidence, allegations and testimony, and/or in failing to disclose known exculpatory evidence, was done jointly and in concert by the individual Defendants, and Does 1 through 100, inclusive, to cause injury to the GWENDOLYN, or was despicable conduct carried on with the willful and conscious disregard of the GWENDOLYN's rights or safety.

45.     As a result of the joint actions of the individual Defendants, and each of them, occurring between the period of March 22, 2016 through and including December 2017, and thereafter, GWENDOLYN has suffered, and will continue to suffer physical and/or severe emotional distress and damages, as a result of these violations of her personal and civil rights of familial association under the First Amendment of the Constitution and for her right to due process on the Fourteenth Amendment.

## FIRST CLAIM FOR RELIEF
## VIOLATION OF CIVIL RIGHTS UNDER *42 U.S.C.* §1983 and §1985
## (FIRST AND FOURTEENTH AMENDMENT FAMILIAL ASSOCIATION)
## BY GWENDOLYN, AGAINST INDIVIDUAL DEFENDANTS KUSTIC,
## SANTANA, NGUYEN, MACIEL AND DOES 1 THROUGH 10, INCLUSIVE

46.     Plaintiff realleges, adopts and incorporates as if set forth at length, and to the extent applicable paragraphs 1 through 45.

47.     All parents have a right to familial association under the First Amendment and Fourteenth Amendment of the Constitution of the United States. Furthermore, the right to familial association may not be abridged without due process. Defendants KUSTIC and SANTANA removed GWENDOLYN's children from her without due process, without a warrant or court order and without the presence of exigent circumstances.

1      48.    Defendants KUSTIC and SANTANA were, at all relevant times,

2  acting under color of state law, and knew or should have known that in order to

3  remove a child from its parents, a warrant, court order, or exigent circumstances is

4  necessary.

5      49.    Defendants KUSTIC and SANTANA, knew, or should have known,

6  that exigency requires a showing of severe and/or serious bodily injury that is

7  imminent, so that removing the child is necessary to thwart the harm, and is the

8  least intrusive measure to avert the risk.

9      50.    Defendants KUSTIC and SANTANA disregarded the rights of

10  GWENDOLYN, and the Constitution. Their acts shock the conscience as they had

11  no legitimate purpose to infringe upon GWENDOLYN's Constitutional Rights,

12  and consciously chose to circumvent well know law that requires a warrant or

13  court order to remove children from their parents, or otherwise requires exigent

14  circumstances in order to deprive GWENDOLYN of her children.

15      51.    Commencing on March 22, 2016, and continuing through at

16  December of 2017, Defendants NICOL KUSTIC, CARLA SANTANA, HIEU

17  NGUYEN, LIZETTE MACIEL, and Does 1 through 10, Inclusive, and each of

18  them, as alleged herein, were acting under color of state law when they knew and

19  agreed, and thereby conspired, to unlawfully interview, examine, and ultimately

20  interfere with the custody and familial rights of GWENDOLYN without a warrant,

21  court order, or exigent circumstances, by removing the children without a warrant,

22  court order, or exigency, and by using coercion, duress, and fraud. They did so

23  without proper reason, basis, authority, or court order, and without reasonable or

24  probable cause, and with deliberate indifference to the rights of GWENDOLYN

25  and her right to exercise free speech and redress and object to, refuse, and/or

26  complain about Defendants conduct.

27      52.    The aforesaid conduct of Defendants, and each of them, violated the

28  civil rights of GWENDOLYN, enforced under *42 U.S.C.* §1983 and §1985, found

1 in the First and Fourteenth Amendment of the United States Constitution, by, but
2 not limited to, removing and conspiring to remove the children by threats and
3 coercion.

4      53.    As a direct result of these Defendants' violations, and in accordance
5 with *42 U.S.C.* §1983 and §1985, Plaintiffs civil rights have been violated in that
6 they have suffered, and will continue to suffer damages, including but not limited
7 to, physical and/or mental anxiety and anguish; as well as to incur attorneys fees,
8 costs and expenses in the underlying case, and in the matter as authorized by *42*
9 *U.S.C.* §1988, in an amount not yet ascertained, all of which shall be shown
10 according to proof at trial.

11      54.    Said individual Defendants and Does 1 through 10 inclusive,
12 wrongful and unlawful conduct as herein alleged was intentional, done with
13 malice, and/or with conscious disregard for the rights of the Plaintiff herein, and as
14 a result of their despicable conduct, Plaintiff is entitled to recover punitive
15 damages from the said individual Defendants and their wrongful acts in the
16 amount of said Defendants' wealth (and as to any indemnification of said damages
17 by COUNTY).

18 **SECOND CLAIM FOR RELIEF**
19 **VIOLATION OF CIVIL RIGHTS UNDER *42 U.S.C.* §1983 and §1985**
20 **(FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS) BY**
21 **GWENDOLYN AND AGAINST KUSTIC, SANTANA, NGUYEN, MACIEL**
22 **AND DOES 1 THROUGH 10, INCLUSIVE**

23      55.    Plaintiff realleges, adopts and incorporates as if set forth at length,
24 and to the extent applicable paragraphs 1 through 54.

25      56.    At all applicable times herein, commencing on March 22, 2016 and
26 continuing through at least December of 2017, Defendants KUSTIC, SANTANA,
27 NGUYEN, MACIEL and Does 1 through 10, inclusive, and each of them, as
28 ///

1   alleged herein, were acting under color of state law when they wrongfully acted or

2   failed to act, and conspired together as set forth herein.

3          57.     That Defendants KUSTIC, SANTANA, NGUYEN, MACIEL and

4   Does 1 through 10, Inclusive, and each of them, knew and agreed, and thereby

5   conspired, to unlawfully detain, threaten to detain, interview, examine and

6   interfere with familial association rights of GWENDOLYN, on and after March

7   22, 2016, and thereafter, including without just cause or authority, without

8   imminent threat of bodily injury, serious bodily injury, and without court order,

9   without parental consent or presence, and by use of coercion, duress, undue

10  influence, and fraud, thereby depriving GWENDOLYN of her procedural due

11  process rights secured to her under Fourteenth Amendment of the U.S.

12  Constitution.

13         58.     That Defendants KUSTIC, SANTANA, NGUYEN, MACIEL and

14  Does 1 through 10, Inclusive further deprived GWENDOLYN of her procedure

15  due process rights by not implementing and/or following, or by ignoring, the

16  procedural safeguards required to satisfy due process and to protect the rights of

17  families.

18         59.     Plaintiff is informed and believe that Defendants KUSTIC,

19  SANTANA, NGUYEN, MACIEL and Does 1 through 10,  and each of them,

20  acted, knew and/or agreed, and/or thereby conspired together as to the

21  aforementioned conduct, doing so without proper reason or authority, court order,

22  without reasonable probable cause, and with deliberate indifference to the rights of

23  said Plaintiffs and/or failing to correct the wrongful conduct of the other

24  Defendants, including from retaliating against GWENDOLYN's exercise of her

25  right to object to, refuse, and complain about the conduct and threats, as protected

26  by the United States Constitution and other laws.

27         60.     The aforesaid Defendants, and each of them, conspired to interfere

28  with and violate the familial association rights of the Plaintiff, as enumerated by

the Constitution, enforceable civilly under *42 U.S.C.* §1983 and §1985, by, but not limited to, acting and conspiring, without just, reasonable or proper cause or warrant to detain, threaten to detain, then to wrongfully and falsely testify to the Court, causing further interference to the rights of GWENDOLYN and to present falsified and knowingly false, unverified, unsubstantiated, accusatory information to the Juvenile Court without proper or just cause for the purpose of continuing to deprive GWENDOLYN of her children, and to facilitate DEFENDANTS perception of an appropriate family, despite lacking any probable cause that GWENDOLYN was incapable of caring for her children.

61.    Defendants KUSTIC, SANTANA, NGUYEN, MACIEL and Does 1 through 10's actions shock the conscience as their actions were designed to deprive GWENDOLYN her children under the alleged authority of the COUNTY OF RIVERSIDE abusing said authority by, including, but not limited to: (a) retaliating against GWENDOLYN for her exercise of free speech in protest of the removal of the children; (b) punishing GWENDOLYN for being a victim of abuse and trying to enforce her rights under a restraining order while at the same time not wanting her children to witness their father being arrested, which said Defendants also used against her; (c) by the use of intimidation, coercion and duress; (d) by using false and fabricated evidence and testimony; (e) by failing to provide exculpatory evidence; and (f) by wrongfully interviewing and subjecting said minors to medical procedures, all during the initiation and pendency of a dependency investigation, and thereafter, in violation of, and interference with, the Plaintiff's constitutional rights to procedural due process of law under the Fourteenth Amendment.

62.    As a direct result of these Defendants' violation, and in accordance with *42 U.S.C.* §1983 and §1985, Plaintiff's civil rights have been violated in that they she suffered, and will continue to suffer damages, including but not limited to, physical and/or mental anxiety and anguish; as well as to incur attorneys fees,

1    costs and expenses in the underlying case, and in the matter as authorized by *42*

2    *U.S.C.* §1988, in an amount not yet ascertained, all of which shall be shown

3    according to proof at trial.

4         63.    The individual Defendants' wrongful conduct as herein alleged was

5    intentional, done with malice, and with conscious disregard for the rights of the

6    Plaintiffs herein, and as a result of their despicable conduct, Plaintiffs are therefore

7    entitled to recover punitive damages from said individual Defendants' wrongful

8    acts and the amount of the Defendants' wealth.

9                          **THIRD CLAIM FOR RELIEF**

10    **VIOLATION OF CIVIL RIGHTS UNDER *42 U.S.C.* §1983 and §1985**

11    **(FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS) - BY**

12    **GWENDOLYN AND AGAINST KUSTIC, SANTANA, NGUYEN, MACIEL**

13                       **AND DOES 1 THROUGH 10**

14         64.    Plaintiff realleges, adopts and incorporates as if set forth at length,

15    and to the extent applicable paragraphs 1 through 63.

16         65.    Commencing on March 22, 2016 and continuing through December

17    2017 Defendants KUSTIC, SANTANA, NGUYEN, MACIEL and Does 1 through

18    100, Inclusive, and each of them, as alleged herein, were acting under color of

19    state law when they knew and agreed, and thereby conspired, to unlawfully detain,

20    question, threaten, examine, interrogate, intimidate, retaliate, injure, and coerce,

21    and continue to detain GWENDOLYN's minor children, and/or to threaten to

22    initiate and pursue a dependency investigation and proceedings (without any

23    basis) as to GWENDOLYN and to cause GWENDOLYN's minor children to be

24    out of the care, custody, and control of GWENDOLYN without proper reason,

25    authority, or court order, without reasonable or probable cause, and with deliberate

26    indifference to the rights of said Plaintiffs and/or in failing to correct the wrongful

27    conduct of the other Defendants.

28    ///

66.   The aforesaid Defendants, and each of them, conspired to interfere with and violate the civil rights of the Plaintiff, as set forth under the Fourteenth Amendment, and actionable under *42 U.S.C.* §1983 and §1985, as to Plaintiffs' substantive due process rights protected by the Fourteenth Amendment of the United States Constitution, including as to their liberty interests in the right of familial association, and their privacy rights under the California State Constitution, by, but not limited to, acting and conspiring to remove, detain and continue to detain, the person and/or physical and legal custody of GWENDOLYN's minor children from the care, custody, and control of their mother, without proper or just cause and/or authority, including by the use of intimidation, coercion and duress, and by using false and fabricated evidence and testimony, and failing to provide exculpatory evidence.

67.   As a direct result of these Defendants' violation, and in accordance with *42 U.S.C.* §1983 and §1985, GWENDOLYN's civil rights have been violated in that she has suffered, and will continue to suffer damages, including but not limited to, physical and/or mental anxiety and anguish; as well as to incur attorneys fees, costs and expenses in the underlying case and in the matter, as authorized by *42 U.S.C.* §1988 in an amount not yet ascertained, all of which shall be shown according to proof at trial.

68.   Said individual Defendants' wrongful conduct as herein alleged was intentional, done with malice, and with conscious disregard for the rights of the Plaintiff herein, and as a result of their despicable conduct, Plaintiff is therefore entitled to recover punitive damages from said individual Defendants' wrongful acts and the amount of the Defendants' wealth.

///
///
///
///

# FOURTH CLAIM FOR RELIEF

## *MONELL* RELATED CLAIMS

## BY GWENDOLYN AND AGAINST THE COUNTY AND DPSS

69.     Plaintiff realleges, adopts and incorporates as if set forth at length, and to the extent applicable paragraphs 1 through 68.

70.     At all relevant times herein, Defendant COUNTY, including through its DPSS agency, established and/or followed policies, procedures, customs and/or practices (hereinafter collectively referred to as "policy" or "policies"), which were the cause of violation of GWENDOLYN's constitutional rights granted to her pursuant to *42 U.S.C.* §1983 and §1985, as well as the case of *Monell v. New York City Department of Social Services*, 436 U.S. 658(1978), including those under the First and Fourteenth Amendments, but not limited to:

a. The policy of detaining and/or threatening to detain children from their parents without exigent circumstances (imminent danger of serious bodily harm), court order and/or consent of their parent or legal guardian;

b. The policy of causing minor children to be interviewed without Court Order, parental consent, parental knowledge, parental presence, and/or without just and reasonable cause;

c. The policy of causing minor children to be medically assessed and/or examined, including, without Court Order, parental consent, parental knowledge, parental presence, and without just and reasonable cause;

d. The policy of using trickery, duress, undue influence, coercion, fabrication and/or false testimony or evidence, and in failing to provide exculpatory evidence, in obtaining and in presenting testimony to the Court causing an interference with the Plaintiff's rights, including those as to due process and familial relations;

///

///

e. The policy of retaliating against a parent who exercises their right to object to, refuse, and/or complain about Defendant COUNTY's DPSS employee's and/or agent's conduct and threats;

f. The policy of using intimidation, fear, threats, coercion, retaliation, misrepresentation and duress during their investigation of allegations of child abuse and/or neglect, including the unwarranted threat of removal, and /or continued detention, of a child unless they relent to the social worker's demands;

g. By acting with deliberate indifference in implementing a policy of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agents and employees, in providing the Constitutional protections guaranteed to individuals, including those under the First and Fourteenth Amendments, when performing actions related to child abuse and neglect, and dependency type proceedings; and

h. The policy of acting with deliberate indifference in failing to correct and discipline the wrongful conduct of employees who fail to provide the Constitutional protections guaranteed to individuals, including those under the First and Fourteenth Amendments, when performing actions related to child abuse and neglect, and dependency type proceedings.

I. The policy of not requiring a social worker to obtain a Court Order, or to require law enforcement to eliminate any threat of physical danger by arresting the alleged perpetrator rather than removing the children from a victim of domestic violence.

(The list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile records.)

71.    Defendants COUNTY, as well as DPSS as agency or agent of the COUNTY, had a duty to Plaintiff at all times to establish, implement and follow policies, procedures, customs and/or practices which confirm and provide for the protections guaranteed them under the United States Constitution, including the

1  First, and Fourteenth Amendments; to use reasonable care to select, supervise,

2  train, control and review the activities of all agents, officers and employees in their

3  employ, including within DPSS; and further, to refrain from acting with deliberate

4  indifference to the Constitutional rights of Plaintiffs herein so as to not cause them

5  the injuries and damages alleged herein.

6      72.    COUNTY breached its duties and obligations to Plaintiff, including

7  but not limited to, failing to establish, implement and follow the correct and proper

8  Constitutional polices, procedures, customs and practices; by failing to properly

9  select, supervise, train, control, and review their agents and employees as to their

10  compliance with Constitutional safeguards; and by permitting the individually

11  named Defendants, and Does 1 through 10, Inclusive, to engage in the unlawful

12  and unconstitutional conduct as herein alleged.

13     73.    Defendants knew, or should have known, that by breaching the

14  aforesaid duties and obligations that it was foreseeable that they would, and did,

15  cause Plaintiff to be injured and damaged by their wrongful policies and acts as

16  alleged herein and that such breaches occurred in contravention of public policy

17  and as to their legal duties and obligations to Plaintiff.

18     74.    These actions, or inactions, of Defendants are the legal cause of

19  injuries to Plaintiff as alleged herein; and as a result thereto, Plaintiff has sustained

20  general and special damages, as well as incurring attorneys fees, costs and

21  expenses, including those as authorized by *42 U.S.C.* §1988, to an extent and in an

22  amount subject to proof at trial.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

## PRAYER FOR RELIEF

### FIRST CLAIM FOR RELIEF

### VIOLATION OF CIVIL RIGHTS UNDER *42 U.S.C.* §1983 and §1985

### (FIRST AND FOURTEENTH AMENDMENT FAMILIAL ASSOCIATION)

1.  General damages in an amount to be determined by proof at trial.
2.  Medical and related expenses in an amount to be determined by proof at trial.
3.  Punitive damages as against individual defendants only.
4.  Attorney fees, costs and expenses as authorized by *42 U.S.C.* Section 1988, according to proof.
5.  Interest according to law.
6.  Any other and further relief that the Court considers proper.

### SECOND CLAIM FOR RELIEF

### VIOLATION OF CIVIL RIGHTS UNDER *42 U.S.C.* §1983 and §1985

### (FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS)

1.  General damages in an amount to be determined by proof at trial.
2.  Medical and related expenses in an amount to be determined by proof at trial.
3.  Punitive damages as against individual defendants only.
4.  Attorney fees, costs and expenses as authorized by *42 U.S.C.* Section 1988 according to proof.
5.  Interest according to law.
6.  Any other and further relief that the Court considers proper.

### THIRD CLAIM FOR RELIEF

### VIOLATION OF CIVIL RIGHTS UNDER *42 U.S.C.* §1983 and §1985

1.  General damages in an amount to be determined by proof at trial.
2.  Medical and related expenses in an amount to be determined by proof at trial.

3.    Punitive damages as against individual defendants only.

4.    Attorney fees, costs and expenses as authorized by *42 U.S.C.* Section 1988 according to proof.

5.    Interest according to law.

6.    Any other and further relief that the Court considers proper.

**FOURTH CLAIM FOR RELIEF - *MONELL* RELATED CLAIMS**

1.    General damages in an amount to be determined by proof at trial.

2.    Medical and related expenses in an amount to be determined by proof at trial.

3.    Attorney fees, costs and expenses as authorized by *42 U.S.C.* Section 1988 according to proof.

4.    Interest according to law.

5.    Any other and further relief that the Court considers proper.

DATED: March 22, 2018

PEREA LAW, APC

By _____
Nathan A. Perea
Attorney for Plaintiff
GWENDOLYN WIXOM

**DEMAND FOR JURY TRIAL**

COMES NOW, PLAINTIFF, GWENDOLYN WIXOM by and through her counsel, and hereby demands trial by jury, on each claim for relief asserted by Plaintiff in her Complaint pursuant to *Federal Rules of Civil Procedure* Rule 38.

DATED: March 22, 2018

PEREA LAW, APC

By _____
Nathan A. Perea
Attorney for Plaintiff
GWENDOLYN WIXOM